# SUPREME COURT

DAVID K. McCARTHY agt. REBA W. KIMBALL, otherwise called REBA W. GILBERT, otherwise called REBA W. McCARTHY.

*Summons — substituted service — Code of Civil Procedure, section 435.*

Where a summons was issued in August, 1877, and all the attempts which had been made to serve the same were prior to the 1st of September, 1877, at which time the Code of Civil Procedure took effect:

*Held,* that a proper case was made out for the order for substituted service, under section 435, on proof that such attempt *had* been made, and that she avoided service, so that personal service could not be made.

The facts necessary to be proven before the order can be granted must exist at the time of the application, as the language plainly imports, and nothing in the words imply, that the avoiding of service must have occurred after a certain date.

The proof required by section 435, on which to found the order for substituted service, need not necessarily be direct and positive, but "*satisfactory proof.*" Such proof as satisfies the mind of the judge to whom the application is made, that the state of facts exist which entitles him to make the order.

What is "*satisfactory proof,*" fully discussed.

The attempts to serve the summons were all made during August, 1877. The new Code took effect September 1, 1877. On that day plaintiff's attorney called on defendant's attorney, and at *his* request made a slight change in the summons to conform to the new Code. Defendant objects that *the* summons which was attempted to be served during August was not the identical paper served under the order, and consequently if there was any attempt to evade the service of a process, it was not that one which was served.

*Held,* that this objection was untenable. The summons was, still even after the change, the old summons amended ; and even if it had not been, that fact would have made no difference. The loss of the identical paper which was attempted to be served would not render nugatory these attempts at service. Upon the establishment of the effort to avoid the service the right to the order depends, and not upon the identity·

·of the papers, so long as either, if served, would commence the same and not a different action.

*Special Term*, 1878.

MOTION to set aside an order for substituted service of a summons.

*A. C. Davis*, for the motion.

*Hiscock, Gifford & Doheney*, opposed.

WESTBROOK, *J.* — On the 4th day of September, 1877, on what was deemed "satisfatory proof" as required by section 435 of the Code, an order was made by me for substituted service of the summons in the above entitled action on the defendant therein.

A previous motion to me by defendant to vacate such order was denied upon the ground, that as the order for substituted service grants "a provisional remedy," section 772 provided it could only be vacated by motion to the court (*See* 54 *How.*, 97). An appeal was taken from the order refusing to vacate the order of substituted service to the general term of this court, which has decided that the judge, who made the original order for substituted service has power to set aside the same (*see* 13 *Hun*, 579), and the motion for that object is now renewed before me upon the same papers upon which it was first heard and refused. An examination of the matter upon the merits now becomes necessary.

By section 435 an order for substituted service of a summons "upon a defendant residing within this state may be made by the court or a judge thereof, or the county judge of the county where the action is triable, upon satisfactory proof, by the affidavit of a person, not a party to the action, or by the return of the sheriff of the county where the defendant resides, that proper and diligent effort has been made to serve the summons upon the defendant, and that the place of his

sojourn cannot be ascertained, or, if he is within the state, that he avoids service, so that personal service cannot be made."

The order for substituted service was founded upon the affidavit of Charles H. Hallock, a party accustomed to serve legal papers, verified September 4, 1877, and establishing the following facts: First. That Hallock, on the evening of August 23, 1877, went to the dwelling of defendant's father, Albert Gilbert, at No. 77 West Twelfth street in New York city, with whom she resided, and inquired of the servant, who answered the door call, for the defendant. The servant gave the information that the defendant was in, and asked the deponent his business. The reply was "that he had a paper for her, said defendant, which deponent was instructed to deliver to said defendant personally." The servant went up stairs, and soon returned with Mr. and Mrs. Gilbert, the father and mother of the defendant. The interview which then took place, is thus detailed in the affidavit: "Deponent then asked to see Mrs. McCarthy, as he, deponent, had a paper for her, which he was directed to deliver to her personally. The said Gilbert then said he was the father of defendant, and that she could not be seen, and that all communications or papers must go through him. The said Gilbert then asked deponent if he was from Syracuse, and deponent told him he was not. He then asked deponent if he was acquainted with Mr. McCarthy, the plaintiff herein, and deponent told him he was not, and thereupon deponent left said house." Second. That Hallock went to the house again on the 25th August, 1877, and inquired for the defendant. He was told she was in, and the servant showed him into the sitting room, and the mother, from up stairs, asked what he wanted. The answer was, "he wanted to see the defendant, and that he had a paper for her." The mother replied, "that defendant was sick, and could not be seen." Hallock rejoined, "it was very strange, as he was informed she was out on the street the day before, on the twenty-third

of August." This ended the conversation, and Hallock left. Third. That he had made diligent effort to serve the summons, and had "watched said house, and for said defendant, and has been unable to serve her." Fourth. That he had been informed and believed, that Gilbert or his family have threatened to call a policeman, and have him or any person arrested, who should try to serve papers on the defendant, and that he believes the "defendant is keeping herself concealed so that personal service cannot be made." To the sufficiency of this affidavit several objections are made, which will be considered.

It is said that all the attempts, which had been made to serve the summons, were prior to the 1st of September, 1877, and, as the new Code took effect on that day, and not before, a case was not made out for the order. It is true that statutes are to have a prospective, and not a retrospective operation, unless otherwise declared, but this principle, as the provision of the Code is simply remedial, impairing no vested and existing rights, is inapplicable (*See note to page* 164 *of Potter's Dwarris on Statutes, citing* 1 *Kent's Com.*, 455). Nothing in the language of the section, or in the policy of the law, requires it to be narrowed as counsel claim. The right to make an order of substituted service upon a certain kind of proof, existed for the first time on the first day of September, and, as the law conferring it neither gives or takes away a right of action, but simply creates and gives from that time a new mode of serving process, there is no reason why full effect should not be given to its words, which permit an order for the new mode of service to be granted, on proof "that proper and diligent effort *has* been made to serve the summons upon the defendant," and "that he *avoids* service, so that personal service cannot be made." These facts must exist at the time of the application, as the language plainly imports, and nothing in the words imply that the avoiding of the service must have occurred after a certain date.

It is also claimed that the proof was insufficient, because

McCarthy agt. McCarthy.

the affidavit does not show that the father and mother of the defendant knew that Hallock wished to serve a summons, and that if it does, there is no evidence that the defendant knew of the attempt. The affidavit is clear, that Mr. and Mrs Gilbert knew that Hallock wished to see their daughter, for the purpose of handing to her a paper, which had to be delivered personally, and though she was in the house, the application was refused upon two different occasions, and on two different days. The questions propounded by Mr. Gilbert, as to whether Hallock was from Syracuse, and whether he knew McCarthy, show that he had a shrewd suspicion of the. errand and he was not thrown off his guard by the negative answer of Hallock. The defendant could not be seen though the information was the paper should be personally delivered by the caller, and though Mr. Gilbert believed (as defendant's counsel argues) the statement of Hallock, that no errand in connection with a suit was the purpose of the desire to see the defendant. It is true, we cannot read the mind of Mr. and Mrs. Gilbert with absolute certainty, but to me the affidavit was " satisfactory proof," that both Mr. and Mrs. Gilbert intended to prevent the service upon, or handing to, the daughter, any paper whatsoever in behalf of the plaintiff. This intent was broad enough to include any summons, as was then and is now supposed. It is true, that there was no direct proof that the defendant knew of the calls by Hallock, and if this objection prevails, a party residing in a house has complete protection against the service of process. He has but to send father or mother to the door, or possibly a servant or relative, who will refuse all access, and when an order for substituted service is made, say, " you fail to prove that I knew of this." If, to the natural suspicions flowing from the relationship of the parties, force is given to the statement of the witness that he had "made *diligent* effort to serve said summons, and has watched said house, and for said defendant and has been unable to serve. her," there was, if not direct, " satisfactory proof " that the defendant was a party to the

McCarthy agt. McCarthy.

conduct of her parents, which excluded the visitor, who had for her a paper, which required a personal delivery. The proof, in my judgment, upon which the order was founded was ample.

Upon the present motion, the defendant also claims that she has conclusively shown by her own affidavit, those of her father and mother, and the servant, Margaret Murphy, that there had been no attempt to avoid the service of any summons; that Hallock only claimed that he had a letter to deliver, and that "publicly and without any disguise, she went upon the streets for the purpose of taking exercise (in company with her mother) nearly, if not quite every day, from the thirty-first of July last, to the second of September, inst., when she went to New Jersey." Before alluding to the affidavits in reply, let us look, for a moment, at the admissions of these papers.

The defendant was *well* enough to walk daily in the public streets, and yet her parents were unwilling to have a simple "letter" delivered to her personally; *bold* enough to walk such streets daily when only accompanied by her mother, and yet afraid to admit the bearer of a letter to her presence, in her father's own house, in presence of both parents, because she "verily believed that said person was sent by her husband either to do her some bodily injury or to entrap her in some way into his power." The refusal to let Hallock see the defendant, to say the least, is not naturally accounted for, but let us look at some other facts proved on this motion by the plaintiff.

Mr. Lauren Redfield, an attorney at law, went to see the defendant on the afternoon of August 23, 1877, and told the servant his errand was with the defendant personally in regard to the matters with her husband. On being informed she was out shopping with her mother, he left word he would call that evening, but did not, sending Hallock. When Hallock, therefore, called that evening, it is safe to assume that the paper or letter which he wished personally to deliver, the parent's knew was concerning the husband's business.

The incidents of that call have already been given. On the twenty-fifth of August, Hallock again went to the house. On the twenty-seventh of August, one William H. Church called, but failed to see her. On August 28, 1877, Mr. Redfield saw Mr. Davis, the counsel for the defendant, and desired him to appear in the action for the defendant. Davis wished to consult with her and her friends before so doing, and on August thirtieth he again saw Davis, who stated "that persons had been trying to serve said defendant, as he supposed, and insisted deponent would keep them away, and promised to appear in the action." On September first he again called, and at Davis' request made a slight change in the summons, to conform to new Code, and then Davis, through his clerk, copied the summons, but gave no formal appearance. On the third day of September Davis refused to appear in the suit, and stated the defendant was out of the city and state. On August 30, 1877, Mr. Davis wrote to Mr. Hiscock, one of the plaintiff's attorneys, that he was informed "by Mr. Gilbert that *several parties* have been annoying his daughter, Mrs. David McCarthy, by persistently calling for her under the pretense of having some private package or communication for her from some member of Mr. McCarthy's family." To this Mr. Hiscock replies, under date of August thirty-first, that he hardly understands the annoyances complained of; that he would like to procure "the service of a summons." On September 3, 1878 (which was Monday), Mr. Davis writes, admitting receipt of letter "on Saturday last" (September first), "but too late for reply." On Sunday, September second, the defendant went to New Jersey. Naturally, we ask, why this sudden journey on Sunday? Is it not reasonable to draw the inference that that visit throws light upon the past, and that the motive which denied to a person calling personal interview was identical with that which prompted a visit to New Jersey? It is, perhaps, in view of the positive allegations of the defendant, and her father and mother, uncharitable to draw the conclusion that there was any

McCarthy agt. McCarthy.

attempt by the defendant to evade the service of process, but the repeated attempts to see her, which were failures, the clear and positive intimations given that nothing could be delivered to the defendant except through members of the family, the careful and particular inquiries as to the object of the calls, the evident understanding of the family, as shown by the letter of Mr. Davis to Mr. Hiscock, of August 30, 1877, that those callers were for some errand from the plaintiff or his family, the unreasonableness of the excuse that fear of abduction or personal injury prompted the denial of the request to see her, and the sudden departure of the defendant to New Jersey, on a Sunday, which was the day after the reception of Mr. Hiscock's letter to Mr. Davis, and also the day after the call of Mr. Redfield upon her counsel, when the latter must fully have understood the object of the visit, satisfy me that the order for substituted service of the summons should not be vacated. No great injury can result to the defendant by a denial of this motion. The issues tendered by the plaintiff in the action must, in all human probability, be met. If the defendant meets them in Onondaga instead of New York, her rights will be as well protected as in the great metropolis, and any allowance which the court may order, to enable her to make a defense, will, doubtless, be measured by the cost of such defense to her.

The defendant lastly objects, that *the* summons, which was attempted to be served during August, was not the identical paper served under the order, and, consequently, if there was any attempt to evade the service of a process, it was not that one which was served. This objection is founded more upon the literal letter of an enactment, than upon its spirit and intent. The plain object of the Code was to give a remedy to a party desirous to bring a suit, which, without it, he could not do, because the party evaded the service of the summons. When the attempts to serve the paper were made, it was in the form prescribed by the old Code, which was about to give place to a new one. In the interview of September 1, 1877,

between Mr. Redfield and Mr. Davis, as the new Code had taken effect on that day, the process was very slightly changed to meet the new requirements. It was still, even after the change, the old summons amended; and even if it had not been, it is not seen how that fact would have made any difference. The spirit of the Code is, that the party applying for the order of substituted service must show that the defendant has endeavored to avoid personal service of *the paper which will commence a suit.* The loss of the identical paper, which was attempted to be served, would not render nugatory these attempts at service which had been made. The fact of evasion would still remain, though the summons was lost; and upon the establishment of the effort to avoid the service the right to the order depends, and not upon the identity of the papers, so long as either, if served, would commence the same, and not a different action. This, it seems to me, is the plain meaning of section 435 of the Code, which should be interpreted so as to give efficacy to the remedy provided, and not be so construed as to prevent, by technical reasons, the granting of a relief which is obviously within its spirit. The maxim of the law, "the letter killeth, while the spirit keepeth alive," should be applied.

My conclusion is, that the motion to vacate the order of substituted service should be denied.